IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:13-CR-0171-FL-1

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| ANTHONY LAMONT HARRIS, ) | |
| ) | |
| Defendant ) | |

This matter comes before the court upon the Defendant's motion to suppress (DE 23). Defendant was charged in an indictment on June 11, 2013 with one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924. (DE 1). The time for filing any responses or replies has expired and the motion is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), it have been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that the motion to suppress be GRANTED.

**I. BACKGROUND**

There is little dispute as to the facts in this case. As a result, for purposes of analyzing the issues, the court adopts Government's statement of facts.

> On February 12, 2013, Deputy Joshua Freeman of the Granville County Sheriff's Office (GCSO) was on routine interdiction patrol traveling on Interstate 85 South, when he observed a white Acura MDX traveling in front of his patrol vehicle. Freeman is also a K-9 officer, and his detection dog was with him at the time. Freeman noticed that the window tint on the front driver's side window of the Acura was too dark, prohibiting viewing inside the vehicle. Freeman pulled his patrol vehicle behind the Acura and activated his blue lights and siren to initiate a traffic stop.
>
> The driver was identified as the defendant Anthony Harris. The vehicle was registered to Shaneka Nicole Hill. Freeman asked the defendant to come to his patrol vehicle, and the defendant did so. A check of the defendant's driver's license revealed that the license was valid and that he had no outstanding

warrants. However, the record check did show that the defendant had numerous previous charges and convictions for weapons offenses and narcotics, the most recent being in 2009.

In Freeman's patrol vehicle, he engaged the defendant in a conversation about the window tint. Freeman asked the defendant about the registration, and explained that he was going to issue a warning ticket. While continuing the conversation, Freeman noticed that the defendant appeared overly nervous. Freeman observed that the defendant's carotid artery was rapidly beating in his neck, that his stomach was trembling, and his chest was rapidly rising and falling. Freeman returned the defendant's license and registration and began issuing a written warning for the tint violation. As he was preparing the citation, Freeman asked the defendant if there was anything illegal inside the vehicle, and the defendant hesitated before he replied in the negative. When asked for consent to search, the defendant declined. Freeman handed the license, registration and the citation to the defendant, and explained to the defendant that he was going to use his K-9 to conduct a free air sniff on the exterior of the vehicle. The defendant acknowledged this.

Freeman utilized his dog to scan the exterior of the vehicle. The dog alerted to the presence of narcotics, and as a result, Freeman searched the vehicle. Freeman advised the defendant that the dog had alerted and that he was going to search. Inside the center console of the vehicle, Freeman recovered a Glock GMBH, Model 22, .40 caliber handgun loaded with 15 rounds of Winchester .40 caliber ammunition. The firearm was lying directly next to a plastic bag containing approximately 8 grams of marijuana. At this point, Freeman placed the defendant in handcuffs and advised him of his Miranda rights. Continuing the search, Freeman recovered approximately .8 grams of crack cocaine from the ashtray. The defendant subsequently admitted to possession of the weapon and drugs.

(DE 28).

## II. STANDARD OF REVIEW

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable." *Wilson v. Arkansas*, 514 U.S. 927, 931, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995).

2

When a police officer stops an automobile and detains the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *see also United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (noting that the Fourth Amendment's protection against "unreasonable searches and seizures" extends to "brief investigatory stops of persons or vehicles"). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810, 116 S.Ct. 1769. Any ulterior motive a police officer may have for making the traffic stop is irrelevant. *Id.* at 813, 116 S.Ct. 1769; *see also Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (noting that reasonableness under the Fourth Amendment is evaluated objectively).

A traffic stop, whether based on probable cause or reasonable suspicion, is analyzed under the standard set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The court must first determine whether the police officer's action was justified at its inception. *U.S. v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992). Second, it must examine whether the police officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop. *Id.*

In the present case, the defendant does not dispute the first factor, that the traffic stop was justified at its inception. Officer Freeman stated that he stopped the vehicle that the defendant was driving for violating North Carolina's window-tinting law.[1] Defendant contends that the prolonged search of the vehicle was not within the scope of the traffic stop and that the officer

---

[1] *See* N.C. Gen. Stat. § 20-127.
3

did not have a reasonable suspicion to detain him beyond the conclusion of the traffic stop. The prolonged search, he asserts, was not reasonably related in scope to the circumstances that justified the stop and, thus, the second *Terry* element is not met. The Government contends that the search of the vehicle and seizure of the drugs and narcotics, as well as Defendant's statements thereafter, should be upheld as admissible.

Police observation of a traffic violation provides sufficient justification to detain the offending vehicle for as long as necessary to perform the traditional incidents of a routine traffic stop—namely, to issue the driver a citation and determine that he is entitled to operate the vehicle. *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005); *U.S. v. Branch*, 537 F.3d 328, 335, 337 (4th Cir. 2008). "[O]nce the driver has demonstrated that he is entitled to operate his vehicle, and the police officer has issued the requisite warning or ticket, the driver 'must be allowed to proceed on his way.'" *Branch*, 537 F.3d at 336 (quoting *Rusher*, 966 F.2d at 876).

To extend a traffic stop beyond this period, the officer must have a justification for doing so other than the initial traffic violation that resulted in the stop. *Branch*, 537 F.3d at 336. A reasonable suspicion of a crime may serve as the justification. *Id*. at 336, 337. The reasonable suspicion standard, which is less demanding than the probable cause standard, is satisfied by the police pointing to "specific and articulable facts which, taken together with rational inferences from those facts, evince more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Id.* at 336 (internal quotation marks and citations omitted). This court has stated:

4

> "It is the [government's] burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *Florida v. Royer*, 460 U.S. 491, 501 (1983). Further, when a defendant's motion to suppress challenges the constitutionality of a warrantless search, the government has the burden to prove by a preponderance of the evidence that the search was lawful. *United States v. Cauthen*, 669 F. Supp. 2d 629, 633 (M.D.N.C. 2009) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971)); *see also United States v. De La Fuente*, 548 F.2d 528, 533 (5th Cir. 1977). The Fourth Amendment requires the suppression of evidence that is the fruit of unlawful police conduct. *United States v. May*, No. 10–4053, 2011 WL 4379301, at *3 (4th Cir. Sept. 21, 2011) (citing *Wong Sun v. United States*, 371 U.S. 471, 484 (1963)).

*U.S. v. Northington*, No. 7:11-CR-41-FL, 2011 WL 7139307, at *5 (E.D.N.C. Nov. 30, 2011). A "preponderance of the evidence" is defined as "[t]he greater weight of the evidence, . . . established by . . . evidence that has the most convincing force; superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other." Black's Law Dictionary (9th ed. 2009).

In this case, Officer Freeman stated that he observed Defendant's overly nervous demeanor, *to wit.*, "his carotid artery could be seen rapidly beating in his neck[, his] stomach was also trembling and the rise and fall of his chest was rapid." (DE 23-1 at 4). He testified as to these observations, as well as to the fact that the Defendant's heart beat was fast. (DE 31 at 9:3–7). Based on his training and experience, Officer Freeman stated that he believed the defendant was more nervous than someone he would typically stop for a traffic violation. (*Id*. at 9:8–13). The officer further stated that he became aware of the Defendant's history of weapons and narcotics offenses charges and convictions. (*Id*). He also testified that, when he was presented with the Defendant's license, he recognized the name as being a person involved in gang activity. These factors, he stated, were the basis of his reasonable suspicion to continue the

5

investigation. (*Id.* at 10:12–16).

Central to the resolution of the present motion is whether Officer Freeman's description of Defendant's behavior as "overly nervous" and his description of the Defendant's history of weapons and narcotics charges and convictions and gang activity is sufficient to extend the traffic stop beyond its original scope and, too, whether the officer's perception of such a demeanor can support a reasonable suspicion of wrongdoing when that behavior is not objectively apparent. While courts have recognized an individual's nervousness as a factor supporting reasonable suspicion, this factor may be given limited weight in the context of a traffic stop. *U.S. v. Newland*, 246 F. App'x. 180, 197 (4th Cir. 2007 ) (dissenting opinion). *See United States v. Richardson*, 385 F.3d 625, 630–31 (6th Cir. 2004) ("[A]lthough nervousness has been considered in finding reasonable suspicion in conjunction with other factors, it is an unreliable indicator, especially in the context of a traffic stop. Many citizens become nervous during a traffic stop, even when they have nothing to fear." (citations omitted)); *see also U.S. v. Santos*, 403 F.3d 1120, 1127 (10th Cir. 2005) ("Only extraordinary and prolonged nervousness can weigh significantly in the assessment of reasonable suspicion."); *United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir. 2001) (noting that mere nervousness is of limited significance in reasonable suspicion inquiry, but that extreme and continued nervousness is entitled to somewhat more weight).

Normally, the undersigned would accept a witness' testimony which was neither weakened nor contradicted on cross examination by other evidence. Counsel for the defendant urges the court to find that the video of the encounter does not show the "overly nervous" conduct as described by Officer Freeman and thus contradicts his testimony. The court's

6

independent review of the video reveals that none of the things described by the officer, such as excessive or unusual nervousness by the defendant during his interaction with the officer, are discernable on the tape. The angle of the camera or the distance of the subject could explain their absence.

On the video, the officer appears to pay scant attention to the defendant. An examination of the videotape inside the patrol car reveals that the defendant and Officer Freeman are together in the vehicle for approximately seven (7) minutes. (Ex. 1 at 2:05–8:52). During that time, Officer Freeman does not appear to look in the direction of the defendant for more than a few seconds. The longest period of time the officer looks at the defendant is a period of six (6) seconds. (*Id*. at 8:16–8:22). Most often, his glances last a second or two. (*Id*. at. 2:16–2:17; 2:24–2:26; 2:56–2:57; 3:01; 4:51–4:52; 5:45–5:47; 5:53–5:54). Moreover, the Defendant's demeanor on the video cannot be characterized as agitated or overly nervous. In fact, during the entire encounter in the patrol car, he appears calm. The court is not gifted with the ability to determine the range of the officer's peripheral vision and thus it is impossible to tell by the extrinsic evidence what the office saw or could have seen. While the court does not doubt Officer Freeman's testimony that he believed the defendant appeared nervous, the description of excessive nervousness observed by him is not apparent on the video. As such, it is entitled to little weight. *See United States v. Digiovanni*, 650 F.3d 498, 512 (4th Cir. 2011) (affirming district court's decision to discount nervousness as a factor when video from the encounter revealed the defendant was calm and cooperative).

7

Further, there are discrepancies between the incident report and the video. Officer Freeman's report regarding the window tint is belied by the video. The incident report states that Officer Freeman "began speaking with Mr. Harris about the window tint on the vehicle being too dark. . . . Mr. Harris stated that the vehicle was purchased with the window tint already on it from a used car dealership." (DE 23-1 at 4). At the hearing, Officer Freeman testified that, in explaining the traffic violation to the defendant, he purchased the vehicle with the dark tint. (DE 31 at 8:2–6). However, a review of the tape indicates that Mr. Harris stated he paid $120.00 for the window tint and that if, as Officer Freeman representations about the tint being too dark were correct, he was displeased to be out that sum of money. (Ex. 1 at 5:02–5:28). The incident report also states that Officer Freeman "asked Mr. Harris if there was anything illegal inside the vehicle and he hesitated and told me no. I asked Mr. Harris if there were any illegal narcotics, counterfeit items, weapons or large amount of U.S. currency in the vehicle and he hesitated again and replied no." (DE 23-1 at 4). The video indicates, however, that the defendant did not hesitate in answering these questions. (Ex. 1 at 7:29–8:02). The inconsistencies between his incident report and the video further undermine Officer Freeman's reliability and, consequently, the reasonableness of his suspicions to justify prolonging the traffic stop. That is not to say that Officer Freeman lacks credibility. However, to the extent that his subjective observations and recollection are not clearly supported by the objective evidence, they amount to only an intuition which, while proven correct, is nonetheless insufficient to constitute articulable facts capable of establishing a reasonable suspicion.

In sum, the video does not support certain representations contained in the incident report nor does the video, objectively, demonstrate that the Defendant's alleged nervous demeanor, a

8

characteristic which, even if present, may be afforded little weight. Such factors weaken the officer's perception and/or recollection and suggest that the "specific and articulable facts" of criminal activity constitute little more than a hunch or a suspicion. Because the court declines to find that the defendant was overly nervous, the undersigned finds that the defendant's history is not sufficient to support a finding the Officer Freeman has "a reasonable suspicion" of criminal activity. For these reasons, the government has failed to carry its burden of proving that the officer had a reasonable suspicion so as to justify an extension of the traffic stop.

The court must next address the extension of the traffic stop to conduct the dog sniff. Officers may inquire into matters unrelated to the justification for the traffic stop but only so long as those inquiries or other actions do not unreasonably prolong the duration of the stop. *Muehler v. Mena,* 544 U.S. 93, 100–01, 125 S.Ct. 1465, 1471 (2005); *U.S. v. Vaughn*, 700 F.3d 705, 710 (4th Cir. 2012). As noted above, if a police officer wants to detain a driver beyond the scope of a routine traffic stop, he must possess a justification for doing so other than the initial traffic violation that prompted the stop in the first place. *See Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319 (1983). A prolonged automobile stop requires either the driver's consent or a reasonable suspicion that illegal activity is afoot. *See Foreman*, 369 F.3d 369 F.3d 776, 781 (4th Cir. 2004); *see also Royer*, 460 U.S. at 500–01; 4 Wayne R. LaFave, Search and Seizure § 9.3(f), at 399; *Branch, supra* ("If a police officer observes a traffic violation, he is justified in stopping the vehicle for long enough to issue the driver a citation and determine that the driver is entitled to operate his vehicle. The driver's consent or reasonable suspicion of a crime is necessary to extend a traffic stop for investigatory purposes."). The Fourth Circuit has stated:

9

> "[T]he law has become well-established that during a routine traffic stop, an officer may request a driver's license and vehicle registration, run a computer check, and issue a citation," *United States v. Rusher*, 966 F.2d 868, 876–77 (4th Cir. 1992), without running afoul of the Fourth Amendment. Any further investigative detention, however, "is beyond the scope of the *Terry* stop and therefore illegal unless the officer has a reasonable suspicion of a serious crime," *id.*, or the individual consents to the further detention, *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004).

*U.S. v. Farrior*, 535 F.3d 210, 217 (4th Cir. 2008). *See also Digiovanni*, 650 F.3d at 507; *Branch*, 537 F.3d at 336; *U.S. v. Williams*, Nos. 1:12-CR-00264-1 and 1:12-CR-00264-2, 2013 WL 1434199 (M.D.N.C. April 9, 2013) (noting that if an officer wishes to prolong a traffic stop beyond the scope of a routine stop, the driver must either grant consent or there must be reasonable suspicion of illegal activity). A canine sniff of the exterior of a vehicle is also constitutionally permissible if it is performed *within the period reasonably required to complete a traffic citation*. *Caballes*, 543 U.S. at 407, 410; *Branch*, 537 F.3d at 335 (emphasis added). In such circumstances, no additional justification for a sniff is required because it is not a search within the meaning of the Fourth Amendment. *Caballes*, 543 U.S. at 408–09; *Branch*, 537 F.3d at 335–36.

Cases upholding the constitutionality of a dog sniff incident to a routine traffic stop have done so where there was either consent or a reasonable suspicion of illegal activity, or when the dog sniff occurred during the time required to complete the traffic stop. *See Callabas, supra* (upholding dog sniff which occurred while officer was in process of writing ticket); *Vaughn, supra* (finding that, under the totality of circumstances, a reasonable suspicion of criminal activity existed, justifying officer's brief extension of the traffic stop with a canine sweep before citation issued); *Digiovanni, supra* (finding that officer lacked either consent or a reasonable suspicion, that he was not diligent in pursing the purposes of the stop and that he embarked on a

10

sustained course of investigation into the presence of drugs which was unrelated to the traffic stop, which was not a *de minimis* delay); *U.S. v. Mason*, 628 F.3d 123 (4th Cir. 2010) (concluding that dog sniff, which alerted to the presence of contraband within five minutes of ticket being issued, was not unreasonable because officer had reasonable suspicion that defendants were engaged in criminal activity, thus justifying extending the stop); *Branch*, 537 F.3d 328 (4th Cir. 2008) (noting that detention of a driver beyond the scope of a routine traffic stop requires either the driver's consent or a "reasonable suspicion" that illegal activity is afoot and finding detention of defendant beyond the scope of the initial valid traffic stop was justified based on reasonable suspicion); *Farrior, supra* (upholding prolonged detention because defendant consented to a continued exchange with officer and the dog sniff occurred during the time the defendant was being issued traffic ticket and, although the dog was not initially at the scene, the delay was *de minimis*); *Foreman, supra* (finding that, under the totality of circumstances, there was a reasonable suspicion that defendant was engaged in drug trafficking); *Williams*, *supra* (no Fourth Amendment violation where the officer had reasonable suspicion, the defendants engaged in a consensual conversation with officer that extended the duration of a traffic stop, the defendant gave partial consent to search and, once the defendant did refuse the search, dog alerted within three minutes, a *de minimis* delay).

In the present case, the time from when the warning was issued to when the canine alerted to the presence of contraband was not great, some 90 seconds. (*See* Ex. 1 at 8:35–10:05).[2] The defendant does not challenge the period of time it took to perform the canine sniff. (DE 31 at

---

[2] At the hearing the parties referred to this amount of time being approximately 40 seconds. For purposes of the present motion, the court has determined that the sniff could have lasted as long as 90 seconds.

11

27:13–28:4). Nor does the government assert that, at the time the dog sniff was performed, the reason for the initial traffic stop was continuing, as Officer Freeman had already handed the defendant the traffic warning (*See* Ex. 1 at 8:30). Controlling case law upholding the permissibility of a brief dog sniff are distinguishable because they involved either consent or a reasonable suspicion of criminal activity, or the dog sniff occurred within the time the initial traffic stop was being processed. None of those justifications are present in this case. The dog sniff occurred after the traffic stop had concluded and prolonged the Defendant's detention without either his consent or a reasonable suspicion of criminal activity. As such, the dog sniff was unreasonable because it was beyond the scope of the initial stop and extended the length of time the defendant was detained.

As there was no justification to prolong the stop beyond its original purpose, the dog sniff was impermissible. Therefore, the search of the vehicle and the items seized therefrom, as well as any statements made by the defendant after he was issued the traffic warning, must be suppressed as they were not reasonably related in scope to the circumstances that justified the initial stop

### III. CONCLUSION

For the aforementioned reasons, it is RECOMMENDED that Defendant's Motion to Suppress (DE 23) be GRANTED.

SO RECOMMENDED in Chambers in Raleigh, North Carolina on December 13, 2013.

WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE